AO 243 (Rev. 01/15)

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District Western District of Texas | |
|---|---|---|
| Name *(under which you were convicted)*:<br>Casy Frazee | | Docket or Case No.:<br>7:17-CR-153(01) |
| Place of Confinement: F.C.I. Florence, P.O. Box 6000<br>Florence, CO 81226-6000 | Prisoner No.: 79199-180 | |
| UNITED STATES OF AMERICA<br>V. Casy Frazee | Movant *(include name under which convicted)*<br>7:19-CV-036 | |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

    United States District Court for the Western District of Texas

   (b) Criminal docket or case number (if you know): 7:17-CR-153

2. (a) Date of the judgment of conviction (if you know): December 6, 2017

   (b) Date of sentencing: December 6, 2017

3. Length of sentence: 292 Months

4. Nature of crime (all counts): Conspiracy to possess with intent to distribute more than fifty grams of actual methamphetamime in violation of 21 USC §§ 841(a)(1) and 841(b)(1)(A) and 21 USC § 846 (Count 1)

5. (a) What was your plea? (Check one)

    (1) Not guilty ☐     (2) Guilty ☒     (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to? Not Applicable

6. If you went to trial, what kind of trial did you have? (Check one)     Jury ☐     Judge only ☐
    Not Applicable

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☐     No ☒

8. Did you appeal from the judgment of conviction?     Yes ☒     No ☐

Not Applicable
_____

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

          Yes ☐      No ☐

    (7)  Result:

    (8)  Date of result (if you know): _____

  (b)  If you filed any second motion, petition, or application, give the same information:

    (1)  Name of court: Not Applicable

    (2)  Docket of case number (if you know): _____

    (3)  Date of filing (if you know): _____

    (4)  Nature of the proceeding: _____

    (5)  Grounds raised:

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

          Yes ☐      No ☐

    (7)  Result:

    (8)  Date of result (if you know): _____

  (c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?   Not Applicable

    (1)  First petition:       Yes ☐    No ☐

    (2)  Second petition:    Yes ☐    No ☐

  (d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

_____

12.   For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

9.  If you did appeal, answer the following:

    (a) Name of court:  United States Court of Appeals for the Fifth Circuit

    (b) Docket or case number (if you know):  No. 17-51127

    (c) Result: _____

    (d) Date of result (if you know): _____

    (e) Citation to the case (if you know): _____

    (f) Grounds raised: District Court abused its discretion, when having denied the
defendant opportunity to withdraw his plea and/or order that the government
act on the specific performances it had agreed upon with the defendant to
induce the plea – prior to the court's sentence.

    (g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☒

        If "Yes," answer the following:

        (1) Docket or case number (if you know):  Not Applicable

        (2) Result: _____

        (3) Date of result (if you know): _____

        (4) Citation to the case (if you know): _____

        (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications,
concerning this judgment of conviction in any court?
    Yes ☐   No ☒

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court:  Not Applicable

        (2) Docket or case number (if you know): _____

        (3) Date of filing (if you know): _____

        (4) Nature of the proceeding: _____

        (5) Grounds raised: _____

**GROUND ONE:** Ineffective Assistance of Counsel During the Sentencing Process, when Counsel failed to object to Court's Variance on Fed.R.Crim.P. Rule 11 Standard, Counsel's Misrepresentation on Plea, Erroneous enhance- ment as a leader/organizer, and the indictment's failure to provide notice of drug quantities.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

***Please see State of Claim 8a-8r Attached. Mr. Frazee incorporates those facts by reference as if set forth in full herein.

(b) Direct Appeal of Ground One:

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☒    No ☐   in part.

    (2) If you did not raise this issue in your direct appeal, explain why: I had raised the sub-issue regarding my counsel's misinterpretation, however the court of appeal denied it without prejudice based on the record having not been developed for it decided on the merits at that time.

(c) Post-Conviction Proceedings:

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐    No ☒

    (2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: Direct Appeal

Name and location of the court where the motion or petition was filed:

Fifth Circuit Court of Appeal

Docket or case number (if you know): 17-51127

Date of the court's decision: August 08, 2018

Result (attach a copy of the court's opinion or order, if available): Allowed Counsel to Withdraw, and Denied Appellant without prejudice.

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐    No ☒

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ☐    No ☒

    (5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐    No ☒

(6)   If your answer to Question (c)(4) is "Yes," state:  `Not Applicable`

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: `Appeals court declined to consider Frazee merits for collateral review.`

**GROUND TWO:** `Ineffective Assistance of Counsel Due to the Cumulative Impact of Multiple Deficiencies or Errors by Counsel During the Pretrial, Plea, Sentencing and Direct Appeal Process`

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

`***Please see Statement of Claim 8a-8r Attached. Mr. Frazee incorporates those facts by reference as if set forth in full herein.`

(b)   **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐          No ☒

(2)   If you did not raise this issue in your direct appeal, explain why:

`My Counsel contended that I would have to file ineffective assistance of counsel claims on Motion to Vacate 28 USC § 2255.`

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐          No ☒

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:   <u>Not Applicable</u>

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

   Yes ☐      No ☐      Not Applicable

(4)   Did you appeal from the denial of your motion, petition, or application?

   Yes ☐      No ☐      Not Applicable

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

   Yes ☐      No ☐      Not Applicable

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   Not Applicable

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:   My Counsel said ineffective assistance of Counsel claims were to be brought on Motion to Vacate 28 USC § 2255.

**GROUND THREE:**   <u>Movant's Conviction and Sentence are Violative of his Fifth and</u>
<u>and Sixth Amendments to the Constitution.</u>

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

***Please see Statement of Claim 8a-8r Attached. Mr. Frazee incorporates those facts by reference as if set forth in full herein.

**(b) Direct Appeal of Ground Three:**    `Not Applicable`

   (1)  If you appealed from the judgment of conviction, did you raise this issue?

       Yes ☐     No ☐

   (2)  If you did not raise this issue in your direct appeal, explain why:

**(c) Post-Conviction Proceedings:**    `Not Applicable`

   (1)  Did you raise this issue in any post-conviction motion, petition, or application?

       Yes ☐     No ☐

   (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

   (3)  Did you receive a hearing on your motion, petition, or application?

       Yes ☐     No ☐    `Not Applicable`

   (4)  Did you appeal from the denial of your motion, petition, or application?

       Yes ☐     No ☐    `Not Applicable`

   (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

       Yes ☐     No ☐    `Not Applicable`

   (6)  If your answer to Question (c)(4) is "Yes," state:    `Not Applicable`

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

## Statement of the Claim

1.) Pursuant to Title 28, United States Code, Federal Rules of Civil Procedure 9-11 and Rule 2 of the Rules Governing Section 2255 Proceedings, Defendant-Movant Casy Frazee (Frazee), Reg. No. 79199-180 states the following claims for relief on Motion to Vacate under 28 USC § 2255.

2.) These Claims for relief incorporate the attached Section 2255 Model Court Form, as well as the information contained therein as if set forth in full herein.

## Statement of Facts Applicable to All Claims Sought For Relief

Petitioner's Arrest

3.) In February of 2017, authorities with the Odessa Police Department (ODP) assigned to a Task Force with the Federal Bureau of Investigation (FBI) learned Casy Frazee surrendered to the United States Probation Department for violating his supervised release. Frazee was at Ector County Correctional Center (ECCC) in Odessa Texas. Prior to turning himself in for the supervised release revocation, Frazee had been under investigation for drug trafficking. Officers with OPD and the FBI Task force researched Frazee's jail calls at ECCC and listened to the recorded phone conversations between Frazee and co-defendant's Melanie Ivy, Jaymi Rice, and Billy Highfill. From the recorded calls, law enforcement learned about an on-going conspiracy between the defendants, when they heard the about the following:

    a.) That Frazee and Melanie Ivy had traveled from Odessa and El Paso Texas on one occasion in December of 2016, where Melanie Ivy had been confronted by Frazee prior to their encroachment of a Texas checkpoint for not telling him, her having in her possession 40ce's of methamphetamine within a syringe;

    b.) That co-defendant's Melanie Ivy and Billy Highfill had an on-going drug trafficking relationship prior to February 06, 2017 (i.e., the date Frazee had surrendered to the US Probation Dept.).

    c.) That Melanie Ivy and Billy Highfill had an ongoing drug trafficking relationship, until Highfill (a.k.a. Tennessee) having been arrested

as a result of Danny Franco's arrest for 7 pounds of methamphetamine in Arizona;

d.) That Jamyi Rice and Melanie Ivy had an ongoing drug trafficking relationship, after authorities listened to the conversation between Rice and Frazee, where Rice told Frazee that in early February of 2017 Ivy had been arrested with her (Jamyi's) money in Arizona, during a trip to purchase methamphetamine;

e.) That Jaymi Rice and Andrew Settles had an ongoing drug trafficking relationship, after authorities listened to the conversation between Frazee and Rice, where Frazee suggested to Rice, that she cut-off Settles (a.k.a. the Kidd), after her complaining to Frazee about Settles having been arrested for possession of 86 grams of methamphetamine when pulled over on a traffic stop. However, Frazee's suggestion to Rice fell on deaf ears, when authorities learned Rice had established an ongoing       drug relationship with Settles girl friend (Lynetta Byers) after having been introduced to one another by Settles via a phone call while Settles had been detained in jail.

As a result of the above conversations and investigations made by authorities, the following facts had been verified:

1.) Melanie Ivy had indeed been arrested in Arizona with money (alleged by Jamyi Rice to be hers);

2.) Andrews Settles had indeed been arrested for 86 grams of methamphetamine during a traffic stop;

3.) Andrew Settles had indeed introduced Lynetta Byers to Jamyi Rice while being detained for the methamphetamine related to the traffic stop via a phone convesation;

4.) Danny Franco indeed had been arrested in a separate narcotic incident in Arizona, that result in Billy Highfill's arrest.

And as a result of those verified facts provided the cause to investigate both Lynetta Byers and Jamyi Rice which produced the following:

5.) Lynetta Byers being in possession of 7 ounces of methamphetamine, after being seen leaving Jamyi Rice's residence and pulled over by the Task Force;

6.) Danny Franco being in possession of 4 ounces of cocaine, also after being seen leaving Jamyi Rice's residence and pulled over by the Task Force;

7.) Jamyi Rice's arrested after Beyers and Franco being caught with narcotics leaving her residence and Beyers admitting that her possession of methamphetamine coming from Rice.

As a result of the phone calls, verification of facts and arrests above authorities filed a complaint against Frazee, Franco, Settles, Highfill, Byers and Ivy.

4.) On June 21, 2017 a One Count indictment had been returned against Frazee and his co-defendants, alleging that beginning on or about January 1, 2017 and continuing until on or about June 1, 2017, in the Western District of Texas and elsewhere, the Defendants, Casy Frazee; Daniel Franco; Andrew Settles; Billy Highfill; Melanie Ivy; Jaymi Rice; and Lynetta Beyers, did combine, conspire, confederate and agree together and with each other to possess with intent to distribute a controlled substance, which offense involved more than 50 grams of actual methamphetamine, contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) and 846. [Doc. 10]

5.) Counsel Josh Stephens was appointed to represent Frazee. Counsel Stephens filed no pretrial motions. However, on October 17, 2017 counsel initiated plea negotiations on the behalf of Frazee with the government. At those negotiations, according to counsel to Movant, the parties had agreed: 1. In exchange for an expedited plea by Frazee; 2. the government would exclude from its initial draft the following factual basis: a.) drug determinations related to Frazee's and Melanie Ivy's trip to and from Odessa and El Paso Texas in December 2016, relating to Ivy's possession of 40cc's of methamphetamine in syringe (allege to be forty once's and/or pound) while encroaching a Texas Check Point. Counsel conveyed to Frazee that—that the amount related to that specific incident would be referred to a quantity of methamphetamine; b.) That Frazee would plea to no more than 50 grams of methamphetamine for his liability in the conspiracy; c.) That the government would not seek to enhance him as an organizer/ leader at sentencing in relation to his alleged directing and cordinating operations of his co-defendants during the drug conspiracy; and d.) that it would be agreed by the parties that Frazee would get a sentence somewhere between 120-140 months.

And as to those stipulations as conveyed above as promised by counsel so that Frazee would accept the plea, movant plead the next day (i.e., on August 17, 2017). Simply, because counsel had advised Frazee that it was the best deal he could receive under his situation.

6.) On August 17, 2017 before the Court of Magistrate Judge David Counts, Frazee's plea was accepted.

7.) On October 19, 2017 the United States Probation Department as per court order prepared a Presentence Investigation Report (PSR) as to Frazee. The Probation Officer (USPD Angela Lopez) calculated the "Base Offense Level" (BOL) under the 2015 Guidelines by utilizing the quantity of methamphetamine from the initial drafted plea (i.e., 14.06 Kilograms). That resulted in a BOL of 34 with a sentencing range of 212-327 months under the USSG § 2D1.1(c). The Probation Officer then determined that Frazee was an organizer, leader, manager, or supervisor under USSG § 3B1,1(a) and enhanced Frazee's BOL an additional 4 levels. That resulted in an adjusted offense level of 38, with a sentencing range of 360 months to life. Finally, the Probation Officer reduced Frazee's adjusted offense level by 3 BOL's under USSG § 3E1.1 for "acceptance of responsibility." This resulted in a Total Offense Level of 35. With a Total Offense Level of 35 and a Criminal History of VI (Movant scorce 17 CHC points under USSG § 4A1.1), the Probation Officer recommended a guideline sentencing range of 292-365 months of incarceration.

8.) On December 6, 2017 Frazee appeared for sentencing before the court of Senior United States District Judge Robert Junell. At sentencing, the District Court Judge adopted the Guideline calculations made by the Probation Officer.

On allocation, Frazee conveyed to the district court in no uncertain terms, that while it was true that he had entered into a Fed.R.Crim.P. Rule

11 plea contract with the government he had done so with particular promised stipulations conveyed by the government to his lawyer (both verbally any in writing). And that, because the PSR had not recognized those promises between the parties he would ask the court to: 1. Order the government to own up to those promise made on the record; and, 2. or allow him to withdraw the plea under a fair and just reason, based on the government reneging its said promises as conveyed to his counsel to him in order to induce Frazee on an expedited plea. [Doc. 244] Sentencing Trans., Pp. 8, Ln. 6-25; p. 9, 1-25; p. 10, Ln. 1-2; p. 17, Ln. 13-22; Also see: **Exhibit "A"**.

Simply, Frazee sought either the performance on the Rule 11 plea be held by the government and or he be allowed to withdraw the plea. Moreover, he contended that the stipulated agreements between the parties should be honored because they were further supported by the record via the Task Force's investigations.

The Court however found that it was significant that Frazee had signed the initial plea's factual basis. And even if the government promised him via counsel during plea negotiations the initial factual basis would be changed prior to sentencing to meet the stipulations between the parties, his signing was finite, and overruled Frazee's attempt to either have the court hold the government to said promise and/or allow him to withdraw the Rule 11 plea.

The Court then sentenced Frazee to 292 months of incarceration for violating 21 USC § 846 (conspiracy to possess with intent to distribute more than fifty grams of actual methamphetamine in violation of 21 USC §§ 841(a)(1) and 841(b)(1)(A) and 21 USC § 846 (Count 1). The sentence represented the bottom of the guideline sentencing range. [Doc. 244] p. 23, Ln. 8-24.

9.) On December 7, 2017 Judgment was entered. [Doc. 233].

10.) On December 19, 2017 a Notice of Appeal was filed. Frazee was appointed Counsel [Arron E. Eckman]. Eckman filed an Ander's Brief pursuant to Ander v. California, 386 US 738 (1976) however, because counsel claimed he couldn't find any non-frivolous claims to appeal. As a result of counsel Eckman's filing, Frazee filed a Motion to the 5th Circuit Court of Appeals seeking to dismiss his counsel's motion. Frazee contended on his filing, that the government had breached its plea and that the district court had utilized the wrong standard under Fed.R.Crim.P. Rule 11 to deny his withdrawing of his plea. And based on the District Court's variance on the Rule 11 standard contrary to his US Const. 5th and 6th Admt.'s right he should be remand to either have his sentence corrected or to withdraw his plea. See Case No. 17-51127 5th Circuit Court of Appeals.

On August 8, 2018 the Court Appeal Granted Counsel to withdraw on Appeal and denied without prejudice Frazee's claims on ineffective assistance of counsel, finding that the record is not sufficiently developed to allow the Circuit Court make a fair evaluation of Frazee's claims of ineffective assistance of counsel, and thus declined to consider the claims without prejudice to collateral review. See 17-51127 Opinion.

11.) No Supreme Court Certiorari had been filed, based on the issues raised by Frazee on Appeal have been established both under Supreme and Circuit law.

12.) Frazee provided counsel with complete and accurate information and did not place any restriction on counsel.

13.) Frazee relied completely and in all material respects on the advice of counsel.

## CLAIM NUMBER ONE

14.) Frazee restates, repleads, and realleges the facts, and allegations set forth in ¶¶ 1-13 herein.

15.) Frazee's sentence is violative of Sixth Amendment US Constitutional right to effective assistance of counsel as hereinafter fully appears.

16.) Counsel could have but did not object to and/or challenge:

a.) The Court's variance on Fed.R.Crim.P. Rule 11 standard, contrary to the Movant's substantial rights under his US Const. 5th and 6th Admt.'s, when Movant attempted to withdraw his plea during sentencing;

b.) Counsel's misrepresentation of the government's promises during the plea negotiations and/or government's breach of the plea contract's performances as promised by the government, contrary to the Movant's 5th and 6th Admt.s, as conveyed to him by counsel at the plea stage to have induced him into an expedited plea;

c.) The Presentencing findings that Frazee was the organizer/leader of his co-defendant's under USSG § 2B1.1(a) without any factual basis established on the record at sentencing, contrary to Movant's 5th and 6th Admt.'s;

d.) The indictment having failed to provide 'notice' of the actual drug amounts alleged over 50 grams (actual) of methamphetamine against Frazee, contrary to Movant's 5th and 6th Admt.'s.

Counsel could have but did not point out to the Court:

a.) Fed.R.Crim.P. Rule 11 standard calls for a fair and just reason to withdraw a plea, and that the court's denial for Movant's to withdraw his plea based on Movant's signing alone, contrary to circuit law was an abuse of discretion, especially when the sentencing court failed to comply with one or more of the three "core concerns" related to Fed.R.Crim.P. Rule 11, for that court could determine whether the Movant knowingly and intelligently had made the choice to plea on the statutory minimums/maximum violations he allegedly faced on the indictment as a result;

b.) Defendant has a right to meaningful advice from his counsel during the plea negotiation stage under the 6th Admt., so that he can make an informed voluntary choice on whether he should pursue trial and/or plea as afforded him under his 5th Admt. right;

c.) Defendant has a 5th Admt. right to finding under established factual basis via proof by an agent and or co-defendant sworn under oath and not based on a hunch or instincts in a presentence report;

d.) Defendant has a right under his 5th and 6th Admt.'s to be given notice of all the charges alleged against him in the indictment. Also, defendant has a right not have his indictment broadened at sentencing in regards to drug amounts not found by the grand jury itself.

8g

17.) Counsel's omissions set forth in ¶ 16 were based on an incomplete investigation of the law and facts relevant to Frazee's case and cause during the plea and sentencing process.

18.) Counsel could have but did not investigate the laws:

United States v. Still, 102 F.3d 118, 122-23 (5th Cir. 1996) and United States v. Watch, 7 F.3d 422, 428, n.6 (5th Cir. 1993) the explains the Circuit Court's standard held on Rule 11 pleas via the three court standards to determine a showing of a fair and just reason for a defendant to withdraw his plea.

Fed.R.Crim.P. Rule 11(d)(2)(B) that provides, "a defendant may withdraw a plea of guilty... the court accepts but before it imposes sentence if... the defendant can show a fair and just reason for requesting the withdraw.

Owens v. Wainwright, 698 F.2d 1111, 1113-14 (11th Cir. 1983) that discusses a criminal defendant's right to meaningful advice from his counsel in connection with the plea bargain; Scott v. Wainwright, 698 F.2d 427, 430 (11th Cir. 1993) that explains, without accurate and complete information at the plea bargaining stage the defendant is unable to make a voluntary and informed plea; Teubert v. Gagnon, 478 F. Supp. 474 (7th Cir. 1979)(same).

Santobello v. New York, 404 US 257, 263 (1971); United States v. Gonzalez, 309 F.3d 882 (5th Cir. 2002) that provides "[i]f the government breaches a plea agreement, the defendant may seek one of two remedies: specific performance, requiring resentencing before a different judge; or withdrawal of his guilty plea. Even if the government's breach did not ultimately influence the defendant's sentence.

United States v. Patterson, 962 F.2d 409 (5th Cir. 1992); United States v. Ronning, 47 F.3d 710, 712 (5th Cir. 1995) that explains: whether or not a defendant is an organizer, leader, manager or supervisor are viewed as factual questions resolved by the sentencing court. The adjustments should

not be based on hunch or instincts, and it should not be based on unsworn

information in the presentence report.

United States v. Olano, 507 US 727, 736 (1993) that explains Fed.R.Crim.P.

Rule 52(b) "plain-error review" steps or prongs to wit:

(1) there must be an error or defect– some sort of deviation from a legal
rule that has not been intentionally relinquished or abandoned, that is
affirmatively waived;

(2) the legal error must be clear or obvious, rather than subject too reasonable
dispute;

(3) the error must have effected the defendant's substantial rights, which in
the ordinary case means he must demonstrate that it affected the outcome
of the district court proceeding;

(4) if the 3 prongs are satisfied, the court has the discretion to remedy the
error– if it seriously affects the fairness, integrity or public
reputation of the judicial proceeding. Id at 736.

Alleyne v. United States, 133 S.Ct. 215 (2013) that held because mandatory

minimum sentences increase the penalty for a crime, any fact that increase the

mandatory minimum is an "element" that must be submitted to the jury; Apprendi

v. New Jersey, 530 US 466 (2000) that held "'facts that increase the prescribed

range of penalties to which a criminal defendant is exposed' are elements of

the crime, and thus Sixth Admt. provides defendants with the right to have a

jury find those facts beyond a reasonable doubt.

21 USC § 841(a) and (b) that set forth three offenses, to wit: Section

841 for the basic offense punishable under Section 841(b)(1)(C) for unspecified

amounts of methamphetamine up to 50 grams; Section 841(b)(1)(B) when the amount

of methamphetamine exceeds 50 grams but is less than 500 grams; and, 841(b)(1)

(A) when the amount of methamphetamine exceeds 500 grams.

The United States Constitutional 5th and 6th Amendments that guarantee,

under the 5th Admt. the right to have each element of a crime presented to,

and found by a jury prior to being tried, convicted or sentence for a crime,

and which also provides that "no person shall be held to answer for a capital,

or otherwise infamous crime, unless on a presentment or indictment of a Grand

Jury." And under the Sixth Admt. that ensures that the said indictment shall inform the accused "of the nature and cause of the accusation" against said person.

United States v. Floresca, 38 F.3d 706, 712 (4th Cir. 1994)(En Banc) that propositions that '[a] constitutional verdict cannot be had on an unindicted offense;' quoting Stirone v. United States, 361 US 211, 215-16 (1960)("After an indictment had been returned its charges may not be broadened through amendment except by the grand jury itself.") Id at 217.

United States Sentencing Guidelines §§ 1B1.3 Relevant Conduct (Factors that Determine the Guideline Range) that promulgates a three step analysis for determining a defendant's liability on a conspiracy offense regarding liabilities for co-defendants conduct forseeable via each conspirators individual agreements during the conspiracy; § 2D1.1 that promulgates divisible conduct related to violations of 21 USC § 841(a) and (b) offenses related to drug types and quantities.

Counsel also failed to investigate the facts against the law regarding the government's allegations in the indictment that contended:

> "That beginning on or about January of 2017, and continuing until on or about June of 2017, in the Western District of Texas and elsewhere, Defendant... did combine, conspire, confederate, and agree together with each other to possess with intent to distribute a controlled substance which involved more than grams of actual methamphetamine, contrary to Title 21, Unite States Code, Section 841(a) and 841(B)(1)(A) and 21 USC § 846."

That (i.e. indictment allegation) incidently failed to allege the actual drug quantities liable to Frazee in relevant part over 50 grams of actual methamphetamine (i.e., element).

Moreover, counsel failed to investigate Frazee's co-defendants as to the facts alleged in the indictment, between themselves and Frazee and/or ask them whether they would provided testimony and/or an affidavit in support

8j

of Movant Frazee to establish drug amounts and leader/organizer factual basis. Especially when one of his co-defendant's had provided letters to Frazee, that she would. See Exhibits "A" and "B".

19.) Counsel's omissions set forth in ¶¶ 16-18 were not the result of reasoned decisions based on strategic or tactical choices among all plausible options available to counsel for the defense of Frazee during the sentencing process.

20.) Frazee was prejudiced from the unprofessional omissions of counsel, set forth in ¶¶ 16-19 because absent said omissions, there is a reasonable probability that the outcome of his sentencing process would have been different.

More specifically, but for counsel's unprofessional omissions there is a reasonable probability that the Court would not have:

a.) allowed Frazee to have plead guilty, after having found under Fed.R.Crim.P. Rule 11(d)(2) standard and Circuit law, Movant had provided to the court a good and just reason to withdraw his plea via the showing of his counsel's deficient performance during the plea stage, when counsel having induced Movant to have plead by misrepresenting the nature of the plea agreement of the parties to him by contending the government had made the following promises:

i.) That Frazee would not be liable for any drug amount over 50 grams of defendants;

ii.) That Frazee would not be enhanced as a leader/organizer of his co-defendants;

iii.) That Frazee would receive a sentence no more than 120-140 months in exchange for an expedited plea;

iv.) And/or counsel would be able to withdraw the plea with any reneging of stipulated promises made thereof above.

b.) allowed Frazee to have been sentenced under USSG § 3B1.1(a) as a leader/organizer, because no factual basis were established by authorities

on the record as required by Circuit law. Simply, Frazee having been enhanced via the court's adoption of the Presentencing Report's Probation Department's findings based on a hunch or instinct from the police task force's phone recordings without more could not satisfy the factual basis requirements according circuit law.

c.) allowed Frazee to have been sentenced under 21 USC § 841(b)(1)(A), after having found that the indictment and/or plea agreement had failed to provide the Movant 'notice' as to the 'actual drug quantities' liable to Frazee over 50 grams of methamphetamine alleged on Count 1. Because the Court would have found, that the lack of notice denied the substantial and substantive rights of the Movant under US Const. 5th and 6th Admt.'s and under 21 USC § 841(a) and 841(b) statute. Simply, could be found that the Movant could not have made an knowingly and/or intelligently choice to either pursue trial and/or enter into a plea on the allegations alleged by the government conterminous with the federal drug statute's law.

The Court would have instead exercised its discretion under Fed.R.Crim.P. Rule 11(d)(2)(B) standard, and found Frazee had indeed provided the court with a good and just reason as required under circuit and supreme court law. Especially, when counsel had induced Movant to plea from having misrepresented the facts on the plea negotiation and/or the government having breached its promises stipulated to Frazee to expedite his plea. Moreover, the court would have found under circuit law when compared against the record, that no factual basis were sworn under oath by anyone for it to have found Frazee had indeed organized, lead, managed or supervised his co-defendant's to justify the court to enhance his sentence by 4 BOL's under USSG § 3B1.1(a). Especially, when one co-defendant sought to communicate with Frazee's counsel to provide affidavit and/of testify under oath to contradict any hunch or

instinct made by authorities thereof. And last, the Court would have found
it contradictory to both circuit and supreme court law not to mention Frazee's
US Const. 5th and 6th Admt.'s for it to have rendered a sentence against him
beyond 21 USC § 841(b)(1)(C)'s maximum penalty, on the allegations provided
in the indictment on Count 1. Because it could have found the context of
the indictment only provided 'notice' against Frazee to have violated federal
law contrary to 21 USC § 841(a)(1) not to have exceeded 500 grams of metham-
phetamine.

Simply, the court would have found as the indictment stood, because it
only specified a range of drug quantities against Frazee to be somewhere
between 0-500 grams for violating 21 USC § 841(a)(1), 841(b)(1)(A) and 846,
Frazee's drug liabilities under federal law and constitution, must be determined
under 21 USC § 841(b)(1)(C)'s penalty range of 0-20 years and not 10 years to
life as found under 21 USC § 841(b)(1)(A). Because, the court would have
found that both circuit and supreme court law cabins mandatory minimum and
maximum penalties that which increase the penalty of a crime to be found by
a jury beyond a reasonable doubt, it follows notice of said minimum and
maximum penalties alleged violated contrary to federal law, must be stated
within the context of indictment. Moreover, the court would have found that
providing notice of the minimum/maximum of drug amounts alleged to have
been violated on the conspiracy by the defendants, likewise sets the parameters
for the sentencing court's drug determinations specifically to movant via
his relevant conduct and the court's findings under the preponderance of
evidence thereof, and conterminous with the defendant's substantial and
substantive rights, respectively. See generally USSG § 1B1.3 (relevant conduct).

21.) Counsel's omissions set forth in ¶¶ 16-10 were not the result of
reasoned decisions based on strategic or tactical choices among all plausible

options available to counsel for the defense of Frazee during the sentencing process.

22.) Counsel's omissions set forth in ¶¶ 16-20 were the result of counsel's abdication of the duty and responsibility to advocate Frazee's case and cause during the sentencing process.

23.) Frazee was prejudiced from the unprofessional omissions of counsel, set forth in ¶¶ 16-20 because absent said omissions, there is a reasonable probability that the outcome of his sentencing process would have been different. More specifically, but for the counsel's unprofessional omissions there is a reasonable probability that the Court:

1.) Would have Granted Frazee to withdraw his plea, and ordered that the parties renegotiate the plea or provide that Frazee have the opportunity to pursue trial as afforded him under the US Constitution; and/or,

2.) Would have found Frazee's drug liabilities to be between 50 to 500 grams of methamphetamine as indicted. Moreover, would have found under USSG § 1B1.3 relevant conduct's 'three step analysis' that Frazee's scope of agreement with his co-defendant's was non-existent from the phone calls and/or arrests that resulted in confiscation of narcotic, to hold him forseeable for the total of drugs of all his co-defendants during the conspiracy. The Court would have found Frazee to be liable for no more than 50 grams of methamphetamine. Thereafter, the court would have likewise found after having reviewed the record (PSR) that there were no factual basis made for the court to find Frazee as a leader/organizer as alleged under USSG § 3B1.1. After satisfying that no factual bases existed, the court then would have found Frazee's BOL under USSG § 2D1.1(c) to be 30 with a sentencing range of 168-210 months for 50 grams of methamphetamine, and after adjusting the BOL by minus 3 point for Farzee having accepted responsibility for his part in the conspiracy, the court

would have found Frazee's BOL to be 27 with a sentencing range of 130-162 months, and would have sentenced Frazee thereof to 130 months.

## CLAIM NUMBER TWO

24.) Frazee restates, repleads, and realleges the facts, pleadings, and allegations set forth in ¶¶ 1-23 herein.

25.) Counsel unprofessionally failed to advise Frazee as to all the facts and law relevant to his decision to plead guilty. Had Frazee been fully advised, there is a reasonable probability that he would not have plead guilty and instead would have proceeded to trial and/or proceeded to a bench trial on stipulated facts. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

26.) Counsel unprofessionally failed to timely, properly, and effectively move to correct the actual drug determinations alleged against Frazee as indicted, and/or defend him correctly on the allegations that he was the leader/organizer of his co-defendants during the plea/sentencing stages, when the record reflected both these subclaims as did Frazee's co-defendants, contrary to which is held against Frazee today. But for counsel's unprofessional error, there is a reasonable probability the outcome of the proceedings would have been different.

27.) Counsel unprofessionally failed to investigate or presente available evidence and legal authority material to the sentencing of Frazee. Counsel also unprofessionally failed to object to, unlawful, false and unreliable evidence used to determine Frazee's guideline sentencing range and ultimate sentence. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

28.) Frazee was prejudiced by the objectively unreasonable preformance

of counsel during the sentencing process, when counsel unprofessionally failed to move for an appropriate downward variance under 18 USC § 3553(a) factors in Frazee's case. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

29.) Frazee's counsel labored under an actual conflict of interest which adversely affected their performance during the pretrial, plea, sentencing and direct appeal process in this case. Counsel owed a 'duty' other than to Frazee. This duty was in conflict with the duty owed to Frazee. Counsel chose between the duties. This choice adversely affected the performance of counsel during the pretrial, plea, sentencing and direct appeal process.

30.) Frazee's conviction and/or sentence is violative of his Sixth Amendment constitutional right to effective assistance of counsel in the pretrial, plea, sentencing and direct appeal process due to the mutliplicity of errors by counsel as set forth herein.

### CLAIM NUMBER THREE

31.) Frazee's restates, repleads, and realleges the facts, pleadings and allegations set forth in ¶¶ 1-30 herein.

32.) Frazee's sentence under 21 USC §§ 841(a)(1) and 841(b)(1)(A) and 866 (conspiracy to possess with intent to distribute more than fifty grams of actual methamphetamine)(Count 1) was imposed as a result of an incorrect application of the sentencing guideline as indicted.

### ALLEGATION OF JURISDICTION

33.) This Court has jurisdiction to entertain, rule on the merits, and grant relief in Claims Number 1-2 under 28 USC § 2255 and the principles of Strickland v. Washington, 466 US 688 (1984), as construed in case law such as United States v. Glover, 531 US 198 (2001) and Williams v. Taylor, 120 S.Ct. 1495 (2000).

34.) This Court has jurisdiction to entertain, rule on the merits, and grant relief in Claim Number Three under 28 USC § 2255 and the principles of Davis v. United States, 417 US 33 (1974)(Statutory claim can be raised in motion pursuant to 28 USC § 2255).

## STATEMENT AS TO WAIVER, CAUSE, AND PREJUDICE

35.) Since Frazee is raising only claims of ineffective assistance of counsel in Claim number One and Claim Number Two, he is not precluded from raising these claims for the first time in this motion pursuant to 28 USC § 2255. Massaro v. United States, 123 S.Ct. 1690 (2003)("an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not petitioner could have raised the claim on direct appeal.).

## JUDGMENT REQUESTED

36.) Pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings, Frazee asks this Honorable Court to **ORDER** an evidentiary hearing where he can prove the allegations herein by: (A) his own testimony; (B) the testimony of Attorney Josh Stephens; (C) the testimony of Attorney Arron E. Eckman; (D) the testimony of (AUSA) James Harwood; (E) additional evidence, and (F) legal argument to be presented at the hearing.

37.) Upon proof of Frazee's allegations herein, Frazee asks this Honorable Court to:

**37A.) ORDER** that Frazee's sentence be **VACATED** and that he be **RESENTENCED** to **130 MONTHS**.

**37B.) ORDER** that Frazee's sentence be **VACATED** and that he be **ALLOWED TO PURSUE TRIAL.**

## MOTION FOR DISCOVERY

38.) Pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings, Frazee asks leave of this Court to invoke the processes of discovery. More specifically, he asks this Honorable Court to **ORDER** that Josh Stephens, Arron E. Eckman allow themselves to be deposed. The evidence developed through the foregoing depositions will materially support the allegations of Frazee, as to the "performance" of counsel, detailed and set forth herein. See Bracey v. Gramly, 520 US 899 (1997). More specifically, Frazee requests this Court to allow counsel to question Josh Stephens, Arron E. Eckman as to the reason for their failures complained of herein.

## PROFFER

39.) Frazee proffers to this Honorable Court that the foregoing depositions will substantiate his allegations set forth in ¶¶ 15-19.

## VERIFICATION

40.) The facts set in ¶¶ 3-13 herein are based on the personal knowledge of Frazee and are true and correct. The rest of the allegations are pleaded on information and belief.

Signed under penalty of prejury
pursuant to 28 USC § 1746 this
19 day of January , 2019,

s/ *Casey Frazee*

Case Frazee (Pro se)
Reg. No. 79199-180
F.C.I. Florence
P.O. Box 6000
Florence, CO 81226-6000

8r

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

**GROUND FOUR:**    Not Applicable

_____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐        No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐        No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)   Did you receive a hearing on your motion, petition, or application?

        Yes ☐     No ☐   Not Applicable

(4)   Did you appeal from the denial of your motion, petition, or application?

        Yes ☐     No ☐   Not Applicable

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐     No ☐   Not Applicable

(6)   If your answer to Question (c)(4) is "Yes," state:   Not Applicable

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:   Not Applicable

13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

The subclaims on Ground One related to counsel's misrepresentation at the plea stage, movant being erroneously enhanced as a leader organizer, and movant having been denied notice as to drug determinations on indictment over 50 grams had not been presented in court based on these matters required development of the record, and the best venue according to his counsel was via Motion to Vacate 28 USC § 2255. As such, they are presented in this motion accordingly.

14.   Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?   Yes ☐    No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the
     you are challenging:

     (a) At the preliminary hearing: Josh Stephens, Law Office of Josh Stephens
                                     1400 N. Grandview Avenue
                                     Odessa, Texas 79761

     (b) At the arraignment and plea:    Josh Stephens

     (c) At the trial:        Not Applicable

     (d) At sentencing:          Josh Stephens

     (e) On appeal:          Aaron E. Eckman, Law Office of Aaron E. Eckman, PLLC
                             414 W. Texas Avenue, Ste. 400G
                             Midland, Texas 79701

     (f) In any post-conviction proceeding:
                                     Not Applicable

     (g) On appeal from any ruling against you in a post-conviction proceeding:

                             Not Applicable

16.  Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court
     and at the same time?          Yes ☐     No ☒

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are
     challenging?          Yes ☐     No ☒

     (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

                             Not Applicable

     (b) Give the date the other sentence was imposed:    Not Applicable

     (c) Give the length of the other sentence:          Not Applicable

     (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or
     sentence to be served in the future?          Yes ☐     No ☐     Not Applicable

18.  TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain
     why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

     Not Applicable, because this motion is timely.

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –

    (1)   the date on which the judgment of conviction became final;

    (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

    (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief: Order that Frazee's sentence be Vacated and that he be Resentenced to 130 months; and/or Order that Frazee's sentence be Vacated and that he be Allowed to Pursue Trial.

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _1-31-19_____

(month, date, year)

Executed (signed) on _1-31-19_____ (date)

_____
Signature of Movant (Casy Frazee (Pro se)
Reg. No. 79199-180

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
(MIDLAND–ODESSA DIVISION)

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.

CASY FRAZEE,

    Defendant-Movant.

_____/

Civ. Case No. _____
USDC Case No. 7:17-CR-153-1

Honorable District Court Judge
Robert Junell

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE 28 USC § 2255

Defendant-Movant Casey Frazee submits the following memorandum in support of his motion pursuant to 28 USC § 2255. This memorandum includes and incorporates by reference the Section 2255 Model Court Form as well as the information contained and incorporated by reference therein.

## STATEMENT OF FACTS

The relevant facts of the motion and memorandum are set forth and pleaded in the Section 2255 Model Court Form and the Statement of Claim attached thereto. This Court should accept the allegation of Mr. Casey Frazee as true where they are not "conclusively" contradicted by the "files and records of the case" for purposes of determining whether Frazee has stated a prima facie claim for relief and is therefore entitled to an evidentiary hearing. See Machibroda v. United States, 368 US 487 (1962); United States v. Jones, 1995 U.S. App. Lexis 41579 (5th Cir.). Since the Court must necessarily review the allegations of the § 2555 motion for sufficiency, Frazee will not repeat those allegations in this memorandum except as necessary.

1.

# ISSUES PRESENTED

ISSUE                                                                      Page

1.) Whether The Conviction and/or Sentence of Frazee is Volative
    of his Sixth Amendment Right to Effective Assistance of Counsel?...4-7

**Frazee Answers: Yes.**

**Most Apposite Case:**

    United State v. Glover, 531 US 198 (2001)

    Wiggins v. Smith, 539 US 510 (2003)

    Strickland v. Washington, 466 US 668 (1984)

1A.) Whether the Performance of Counsel for Frazee Fell Below an
     Objective Standard of Reasonableness During the Pretrial, Plea,
     Sentencing and Direct Appeal Process?............................7-8

**Frazee Answers: Yes.**

**Most Apposite Case:**

    Wiggins v. Smith, 539 US 510 (2003)

    Kimmelman v. Morrison, 477 US 365 (1986)

    Williams v. Taylor, 120 S.Ct. 1495 (2000)

1B1.) Whether Frazee was Prejudiced by the Objectively Unreasonable
      Performance of Counsel During the Sentencing Process, When
      Counsel Failed to Object/Challenge to: a. the District Court's
      Variance From Fed.R.Crim.P. Rule 11 Standard to Withdraw his
      Plea; b. to the Enhancement of Leader/Organizer Without Factual
      Basis Having Been Sworn by Agents; c. to Having Been Enhanced
      on Drug Determinations Without Notice in the Indictment?........9-17

**Frazee Answers: Yes.**

**Most Apposite Case:**

    United States v. Glover, 531 US 198, (2001)

    United States v. Watch, 7 F.3d 422, 428 n. 6 (5th Cir. 1993)

    United States v. Ronning, 47 F.3d 710, 712 (5th Cir. 1995)

    Alleyne v. United States, 133 S.Ct. 215 (2013)

    Apprendi v. United States, 530 US 466 (2000)

    United States v. Floresca, 38 F.3d 706, 712 (4th Cir. 1994)(En Banc)

1B2.) Whether Frazee was Prejudiced by the Cumulative Impact of
      Multiple Deficiencies or Errors by Counsel During the
      Pretrial, Plea, Sentencing and Direct Appeal Process?.........18

2.

**Frazee Answers: Yes.**

**Most Apposite Cases:**

Harris by and Through Ramseyer v. Blodgett,
853 F.Supp. 1239 (W.D. Wash. 1994)

Harris v. Wood, 64 F.3d 1432 (9th Cir. 1995)

2.) Whether Frazee's Sentence was Unlawfully Computed When Drug
    Determinations Were Made From an Indictment That did not Specify
    Drug Amounts That Exceeded 500 Grams of Methamphetamine?..........18-21

**Frazee Answers: Yes.**

**Most Apposite Cases:**

Alleyne v. United States, 133 S.Ct. 215 (2013)

Apprendi v. United States, 530 US 466 (2000)

United States v. Floresca, 38 F.3d 706, 712 (4th Cir. 1994)

Stirone v. United States, 361 US 211, 215-16 (1960)

3.) Whether an Evidentiary Hearing is Necessary and Would be Useful
    to This Court?................................................21-22

**Frazee Answers: Yes.**

**Most Apposite Cases:**

United States v. Blaylock, 20 F.3d 1458 (9th Cir. 1994)

United States v. Magini, 973 F.2d 261 (4th Cir. 1992)

Stoia v. United States, 22 F.3d 766 (7th Cir. 1994)

Shaw v. United States, 24 F.3d 1040 (8th Cir. 1994)

**ARGUMENT**

1.) **The Conviction and/or Sentence of Frazee is Violative of His Sixth Amendment Right to Effective Assistance of Counsel.**

1A.) **The Performance of Counsel for Frazee fell Below an Objective Standard of Reasonableness During the Pretrial, Plea, Sentencing and Direct Appeal Process.**

In Strickland v. Washington, 466 US 688 (1984), the Supreme Court established a two prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. Id 466 US at 688-689.

The Court state that, "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

The Court clarified that this reference to "highly deferential scrutiny referred only[1] to the first or performance prong of the test and meant that,

> "...the defendant must overcome the presumption that, under the circum-stances, the challenged action 'might be considered sound trial strategy.'"

The Court added that,

> "...strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable decisions that makes particular investigations unnecessary." Id.

---

[1] The Court stated that "factors which may actually have entered into counsel's selection of strategies and ...may thus affect the performance inquiry... are irrelevant to the prejudice inquiry." Strickland, 466 US at 695.

4.

Two years after its Strickland decision, the Court reaffirmed that this position of the decision sets forth what test that can be made[2] in evaluating whether the performance of counsel was within the range of "reasonable professional assistance," or fell below an objective standard of reasonableness. Kimmelman v. Morrison, 477 US 365, 385-387 (1986).

The Supreme Court noted that:

> ...a single, serious error may support a claim of ineffective assistance of counsel."

Kimmelman, 477 US at 384. The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance," even where, "counsel's performance at trial [was] generally creditable enough," and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." Id. 477 US at 386.[3]

The Court held that the determining factor was whether or not counsel's "single serious error" or "failure" was the result of, or attributable to, a trial "strategy." Id. 477 US 384-386.

The Court then found that no "strategy" was involved in that case and that counsel's performance thereby fell below the Strickland objective standard because counsel's failure was based "on counsel's mistaken beliefs" as to the

---

2/ This presupposes, for the instant argument, that defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. Strickland, 466 US at 691.

3/ See also United States v. Alexander, 2006 US App. Lexis 5602 (DC Cir.)(same); Murry v. Carrier, 477 US 478, 496 (1986)("The right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."); Smith v. United States, 871 F.Supp. 251, 255 & [n.8] (E.D. Va. 1994)(finding performance below constitutional standards for "failure to raise an objection to a clear and indisputable error in the PSR," but pointing out that "[t]he error was an innocent inadvertence, and not indicative of the entirety of counsel's representation of petitioner, which was competent and effective in all other respects.")

5.

laws governing discovery. Id. 477 US at 385.

The Supreme Court added:

> "Viewing counsel's failure to conduct any discovery from his perspective
> at the time he decided to forego that stage of pretrial perparation and
> applying a 'heavy measure of deference,' ibid., to his judgment, we
> find counsel's decision unreasonable, that is contrary to prevailing
> norms. The justification Morrison's attorney offered for his omission
> betray a startling ignorance of the law—— or a weak attempt to shift
> blame for inadequate preparation. 'Counsel has a duty to make reason-
> able investigations or to make a reasonable decision that makes
> particular investigations unnecessary.' Id. Respondent's lawyer neither
> investigated, nor made a reasonable decision not to investigate the
> State's case through discover."

Kimmelman v. Morrison, 477 US at 385.

In other words, the Court determined that counsel's omissions were not part
of any "strategy" or trial tactic because they had not been taken after through
investigation of the law and facts relevant to all plausible options available
to counsel. From this, the Court determined that the omissions were professionally
unreasonable and had cause counsel's performance to fall below the objective
standard of Strickland. See Kimmelman, 477 US at 385-387; Wiggins v. Smith,
123 S.Ct. 2527, 2535 (2003)(counsel's failure to investigate mitigating evidence
could not be strategic "because the investigation supporting their choice was
unreasonable."); also see: United Stricklin, 290 F.3d 748 (5th Cir. 2002)(same).

In short, no deference is due to counsel's actions, and the performance of
counsel falls below the Strickland objective standard of reasonableness[4] if
counsel's specific acts or omissions are not demonstrably[5] the result of actual
strategic choices made between or among all plausible options "after thorough
investigation of law and facts relevant to [the] options." Strickland, 466 US
at 691; Kimmelman, 477 US at 385-387; Willams v. Taylor, 120 S.Ct. 1495, 1512-
16 (2000)[6]

---

[4] For purposes of this portion of the Strickland analysis, the Court presumes
that counsel's failures were at least potentially prejudicial to the defendant.
Kimmelman v. Morrison, 477 US at 365, 387, 390-91.

Where a convicted defendant is making a claim of ineffective assistance of counsel, the defendant,

> "... must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."

Strickland, 466 Us at 690.

If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 U.S.C. § 2255 must hold an evidentiary hearing.[7/]

In the instant case, Mr. Frazee has made specific, sworn, factual allegations which this Court should accept as true for the purpose of considering whether to hold an evidentiary hearing, because they are not conclusively disproved by the files and records of this case.

The allegations of Frazee as to the "performance" of counsel include the following: See: § 2255 Motion, Statement of Claim, Claim One ¶¶ 14-22; Claim Two ¶¶ 24-30; Exhibit "A".

Assuming for purposes of this portion of the Strickland analysis that the foregoing failures were potentially prejudicial to Frazee it cannot be said from the present record that counsel's "performance" did not fall below the objective standard of Strickland. This is because Frazee has pleaded that counsel's failures in defending Frazee were based on counsel's failures to investigate and/or misrepresented the law and facts material to him in the

---

5/ See Wiggins v. Smith, 123 S.Ct. 2527, 2535 (2003)(court's "assumption" that counsel made reasonable investigation vacated when unsupported by the record); United States v. Acklen, 47 F.3d 739, 743-44 (5th Cir. 1995)(remanding for evidentiary hearing where was nothing in the record to indicate counsel's failures were attributable too strategic choice among all plausible alternatives available for defense).

6/ The courts have decided that counsel's failure to consider or investigate laws and facts relevant to potentially viable defenses cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or tactical" or "objective reasonable," because "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such a decision could be made." Strickland, 466 US at 690-91.

7/ Machibroda v. United States, 368 US 487 (1962).

pretrial, plea, sentencing and direct appeal process; an "innocent inadvertence"[8/] but none-the-less an impermissible abdication of counsel's duty to advocate Frazee's case and cause.[9/]Williams v. Taylor, 120 S.Ct. 1495, 1512-16 (2000); Wiggins v. Smith, 123 S.Ct. 2527, 2535 (2003)(counsel's failure to investigate mitigating evidence could not be strategic "because the investigation supporting their choice was unreasonable.")[10/]

None of these allegations are rebutted, much less "conclusively" refuted by the files and records of this case. They are, in fact, not even addressed, because the failures to investigate occurred outside the courtroom.

Under these circumstances, this Court should find that Frazee has stated a claim of ineffective assistance of counsel in the pretrial, plea, sentencing and direct appeal process sufficient to entitle him to, and require, an evidentiary hearing.

Mr. Frazee asks this Honorable Court to **ORDER** such a hearing to allow him to prove his case.

---

[8/] Smith v. United States, 871 F.Supp. 251, 255 & [n.8](E.D. Va. 1994)(finding performance below constitutional standards for "failure to raise an objection to a clear and indisputable error in the PSR," but pointing out that "[t]he error was an innocent inadvertence, and not indicative of the entirety of counsel of counsel's representation of petitioner, which was competent and effective in all other respects.") United States v. Al King Jones, 2001 US Dist. Lexis 1740 (E.D. LA 2001)(same).

[9/] See also United States v. Soto, 132 F.3d 56, 58 (D.C. Cir. 1997)(counsel cannot properly invoke a particular Guideline provision "merely by reciting to the court a list of mitigation facts)(quoting United States v. Foster, 988 F.2d 206, 210 (D.C. Cir. 1993)(quoting United States v. Sergio, 934 F.2d 875, 881) (7th Cir. 1991)). United States v. Harfst, 168 F.3d 398, 401 (10th Cir. 1999).

[10/]See also: Anderson v. Johnson, 338 F.3d 382 (5th Cir. 2003)(counsel's performance below objective standard of Wiggins v. Smith where attorney failed to make complete investigation of case.

**1B1.) Frazee was Prejudiced by the Objectively Unreasonable Performance of Counsel During the Sentencing Process, When Counsel Failed to Object/Challenge to: a. the District Court's Variance From Fed.R.Crim.P. Rule 11 Standard to Withdraw his Plea; b. to the Enhancement of Leader/ Organizer Without Factual Basis Having Been Sworn by Agents; c. to Having Been Enhanced on Drug Determinations Without Notice in the Indictment.**

In writing for the majority in Strickland, Justice O'Connor stated the general rule that,

> "... actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."

Id. 466 US at 693.

More specifically, Justice O'Connor set forth the now well know statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Id. 466 US at 695.

While the Court noted the government's perhaps natural, inclination to argue that attorney error is harmless unless the defendant can show that "counsel's deficient conduct more likely than not altered the outcome of the case," /11/ the Court specifically and explicitly rejected this argument by the government. /12

In rejecting any outcome determinative test such as that employed in Federal Rule of Criminal Procedure 33 analysis, the Court stated:

> "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."

Strickland, 466 US at 694. [13]/

---

11/ Id. 466 US at 694

12/ Id. This of course, means that the "plain error" standard also does not apply to ineffective assistance of counsel claims. Id. see US v. Olano, 507 US 725, 735 (1993)(plain error "must be real and such that it probably influenced the verdict..."). Moreover, the court have rejected any 'sufficiency of untainted evidence' test in determining "prejudice" under Strickland. See Johnson v. Scott, 68 F.3d 106, 109-10 (5th Cir. 1995).

The Court further specifically rejected the application of the "actual prejudice" standard of United States v. Frady, 456 US 152 (1982), to claims of ineffective assistance of counsel, with the following admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on the judgment. See United States v. Frady, 456 US 152, 162-169 (1982). An ineffectiveness claim, however, as out articulation of the standards that govern decision of such claims makes clear, is an attack of the fundamental fairness of the proceedings whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, see id. at 126, no special standards ought to apply to ineffectiveness claims made in habeas proceedings."

Strickland, 466 US at 687-98.[14]

The Court hearing an ineffectiveness claim should consider the totality of the factors which guided the decisionmaker in the challenged proceeding, then try to determine which factors were or were not "affected" by counsel's errors.

> "Taking the unaffected [factors] as a given, and taking due account of the effect of the errors on the remaining [factors], a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

Strickland, 466 US at 696.

Where through "hindsight"[15] the Court can determine that, but for errors of counsel, there is a "reasonable probability" of a different outcome, a probability sufficient to "undermine confidence" in the challenged proceedings, the defendant has affirmatively proven prejudice. Strickland, 466 US at 694-95; United States v. Glover, 531 US 198 (2001).

---

13/ See also Soffar v. Dretke, 368 F.3d 441, 478-480 (5th Cir. 2004)(same).
14/ See Kimmelman, 477 US at 375, 393 and [n.1] (demonstration of "a reasonable probability" that the verdict would have been different constitutes "actual prejudice" in claims of actual ineffective assistance of counsel.)
15/ Lewis v. Dretke, 355 F.3d 364 (5th Cir. 2003)(citing Westley v. Johnson, 83 F.3d 714, 723 (5th Cir. 1996)(citing Lockhart v. Fretwell, 506 US 364, 373 (1993).

Since 2005, when the Guidelines were determined to be "advisory" in United States v. Booker, 543 US 220 (2005), the Strickland test, and case law supporting ineffective assistance of counsel at sentencing under the Guidelines, remains valid for determining "prejudice" for counsel's acts and omissions with respect to sentencing. This is because there can still be a "reasonable probability" that the Court would have followed the Guidelines and/or case law construing the Guidelines and made a downward adjustment under advisory guidelines even though the Court wasn't, and isn't, "required" to grant the downward adjustment and even though the Court had discretion to impose some other sentence. **16/**

In the instand case, Mr. Frazee has made specific, sworn, factual allegations, in the Statement of Claim of his Section 2255 motion, that he was prejudiced by the objectively unreasonable performance of counsel in the sentencing process, when counsel failed to object to the Court's variance on Fed.R.Crim.P. Rule 11 standard at sentencing when petitioner sought to withdraw his plea from having been induced to plea from misrepresentations on the stipulated facts alleged by counsel that the government had agreed to if he would expedite his plea; also when counsel failed to object to the enhancement (BOL 34 to 38) of Frazee as a leader/organizer of his co-defendants without any sworn factual basis sworn by anyone on the record to substantiate said ehancement; and last counsel failed to object to the drug determinations found by the court, when the indictment failed to provide Frazee notice of quantities over 50 grams of methamphetamine against Frazee. These allegations include the following: **See § 2255 Motion, Statement of the Claim, Statement of Facts Applicable to All Claims Sought for Relief ¶¶ 7-8; also see: Claim Number One: ¶¶ 14-23.**

In United States v. Still, 102 F.3d 118, 122-23 (5th Cir. 1996) and United States v. Watch, 7 F.3d 422, 428, n.6 (5th Cir. 1993) the Court Appeals

11.

determine when an appellant claims that a district court has failed to comply with Rule 11, we "conduct a straightforward, two question 'harmless errror' analysis: (1) Did the sentencing court in fact vary from procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the defendant. United States v. Johnson, 1 F.3d 296, 298 (5th Cir. 1993)(en banc).

Fed.R.Crim.P. 11(d)(2)(B) provides, "a defendant may withdraw a plea of guilty... the court accepts but before it imposes sentence if... the defendant can show a fair and just reason for requesting the withdraw.

Owens v. Wainwright, 698 F.2d 1111, 1113-14 (11th Cir. 1983) discusses that a criminal defendant has a right to meaningful advice from his counsel in connection with the plea bargain.

Scott v. Wainwright, 698 F.2d 427, 430 (11th Cir. 1993) explains, without accurate and complete information at the plea bargaining stage the defendant is unable to make a voluntary and informed plea; Teubert v. Gagnon, 478 F.Supp. 474 (7th Cir. 1979) hold the same.

Santobello v. New York, 404 US 257, 263 (1971) and United States v. Gonzales, 309 F.3d 882 (5th Cir. 2002) provides "[i]f the government breaches a plea agree-ment, the defendant may seek one of two remedies: specific performance, requiring resentencing before a different judge; or withdrawal of his guilty plea. Even if the government's breach did not ultimately influence the defendant's sentence.

As set forth above in Claim One subclaims a. and b., counsel could have but did not object to district Court's variance from Rule 11 when Frazee attempted to withdraw his plea, from having been misrepresented the facts stipulated by the government to counsel during the plea stage to induce his plea expeditiously. Simply, counsel had informed Frazee to induce him to plea, that the government had to agreed to not hold him liable for more than 50 grams of methamphetamine, and that he would not be enhance as a leader/organizer. Moreover, that he would

not receive a sentence over  120–140 months. See **Exhibit "A"**.

The foundational principles governing guilty plea procedures derive from constitutional notions of due process. Because a guilty plea involves the relinquishment of several rights and privileges, it must be entered voluntarily and knowingly. McCarthy v. United States, 394 US 496, 466 (1969). A guilty plea is voluntary in the constitutional sense where where the defendant "received 'real notice of the true nature of the charges against him.'"

In the instant case, at the plea stage Frazee's counsel [Josh Stephens] had informed Frazee that he faced only 50 grams of methamphetamine under the conspiracy, as reiterated by the magistrate judge at the initial appearance proceeding. [Doc. 242] p. 2, ln. 23–25 and p. 3, ln. 1–4. Counsel had reiterated the drug quantities of 50 grams of methamphetamine as the stipulated amount the government had agreed to during plea negotiations, moreover as stated above counsel also stated Frazee would not be alleged as a leader/organizer and/or charged with drug determinations over 50 grams as initially sought by the government on its rough draft stipulated facts at plea negotiations. However, those stipulated promises were misrepresented by counsel at the plea stage. Counsel had told Frazee that in order to receive the promises made by the government at plea negotiations he must sign the present rough draft of stipulated facts to lock in the government's agreement, and the particulars on the drug quantities and enhancement will be clarified prior to sentencing so that he could receive the benefits as promised or he could withdraw the plea.

Simply, the misrepresentations to induce Frazee to plea, provides that Frazee did not knowingly and intelligently plea, and as such violated his substantial rights. Because counsel's unfamiliarity with the facts and law relevant to Frazee's case made his representation ineffective, thus Frazee's plea was not knowingly and voluntarily entered. Moreover, it denied Frazee the sole

13.

choice to plead guilty or pursue trial. Such a choice deprives the plea of the voluntariness required to meet constitutional standards. And as such, it could be found that the Court had varied from Fed.R.Crim.P. Rule 11's standard (i.e., fair and just reason to withdraw a plea) when Frazee sought, to withdraw his plea at sentencing via an attempt showing of counsel's misrepresentation to him on government's promise during the plea stage as conveyed above. Yet, the court having denied him not for those reasons but solely for Frazee's signing of the original plea draft on its factual basis, whether or not stipulated promises were to be cured prior to its sentencing as understood by Frazee from counsel.

In United States v. Patterson, 962 F.2d 409 (5th Cir. 1992) and United States v. Ronning, 47 F.3d 710 (5th Cir. 1995) the court explained, whether or not a defendant is an organizer, leader, manager or supervisor are viewed as factual questions resolved by the sentencing court. The adjustment should not be based on hunch or instincts, and it should not be based on unsworn information in the presentence report.

As set forth above in Claim One subclaim c., counsel could have but did not object to the district Court's findings of Frazee being an organizer/leader of his co-defendants under USSG § 3B1.1.

In the instant case, at the pretrial, plea and sentencing stage Frazee has made specific, sworn, factual allegations in the Statement of Claim of his Section 2255 motion, that he was prejudiced by the objectively unreasonable performance of counsel at all stages of trial, when counsel failed to challenge his having been enhanced under USSG § 3B1.1 as a leader/organizer of his co-defendants without any sworn statement in the government's case and chief to establish same as required by circuit law. Moreover, especially when counsel had received correspondence from co-defendant Melanie Ivy would counter such a claims made by

14.

either government and/or its agents. **See Exhibit "B".**

Simply, counsel's failure deprived both the Court and Frazee, when it failed to object under law that Frazee was not the organizer, leader of his co-conspirators based on no sworn record having been established to support such a preponderance finding by the court under 18 USC § 3553(a) factors. As such Frazee's substantial due process were denied by the Court when it had subjected him to an enhancement that he was otherwise ineligible for.

In Alleyne v. United States, 133 S.Ct. 215 (2013) the Supreme Court held because mandatory minimum sentences that increase the penalty for a crime, any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

Likewise in Apprendi v. New Jersey, 530 US 466 (2000) the Supreme Court held "'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime, and thus Sixth Admt. provides defendant with the right to have a jury find those facts beyond a reasonable doubt.

Under 21 USC § 841(a) and (b) (drug offense prohibited act and penalties) that set forth three offenses, to wit: Section 841 for the basic offense punishable under Section 841 (b)(1)(C) for unspecified amounts of methamphetamine up to 50 grams; Section 841(b)(1)(B) when the amount of methamphetamine exceeds 50 grams but is less than 500 grams; and, 841(b)(1)(A) when the amount of methamphetamine exceeds 500 grams.

The United States Constitution under 5th and 6th Amendments guarantee, the right to have each element of a crime presented to, and found by a jury prior to being tried, convicted or sentence for a crime, and which also provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. Moreover, the 6th Admt. ensures that the said indictment shall inform the accused "of the nature and

15.

cause of the accusation" against said person.

In United States v. Floresca, 38 F.3d 706, 712 (4th Cir. 1994)(En Banc) the court propositioned that '[a] constitutional verdict cannot be had on an unindicted offense;' quoting Stirone v. United States, 361 US 211, 215-16 (1960) ("After an indictment had been returned its charges may not be broadened through amendment except by the grand jury itself." Id at 217.

As set forth above in Claim One subclaim d., counsel could have but did not object to the District Court's findings of Frazee liable over 50 grams (actual) of methamphetamine under 21 USC § 841(a)(1),(b)(1)(A).

In the instant case, at the pretrial, plea and sentencing stage Frazee has made specific, sworn, factual allegations in the Statement of Claim of his Section 2255 motion, that he was prejudiced by the objectively unreasonable performance of counsel at all stages of trial, when counsel failed to object/ challenge the court's drug determinations liable to Frazee over 50 grams of methamphetamine, when the indictment failed to give 'notice' on quantities above 500 grams of methamphetamine for the court's preponderance findings, thereof. **See Exhibit "C": [Doc. 10] Indictment.**

Under both Supreme Court decisions held in Alleyne v. United States, 133 S.Ct. 215 (2013) and Apprendi v. New Jersey, 530 466 (2000) the Supreme Court found that any fact that increased the mandatory minimum and or the prescribe range of penalties to which a criminal defendant is exposed are elements that are to be found by the jury as fact, respectively. Thus, it can be found that under both Alleyne and Apprendi holdings, a district court's discretion for drug determinations at sentencing (under a preponderance of evidence) are cabin between the jury's findings on minimum and maximum findings beyond a reasonable doubt. As such, an indictment need provide a defendant notice as to defend himself accordingly at trial and sentencing accordingly. And as

16.

such, because Frazee did not receive notice on his indictment to a specific amounts of methamphetamine under 50 grams or over 500 grams, the court's finding via a preponderance that Frazee's liability over 500 grams (i.e., 14.06 kilograms) was clear error, and violated Frazee substantial rights. See: United States v. Olano, 507 US 727, 736 (1993) that explains Fed.R.Crim.P. Rule 52(b) "plain-error" steps.

Simply, because the indictment's failure to allege a fact of drug quantity over 50 grams of methamphetamine the increased statutory maximum (i.e., over 21 USC § 841(b)(1)(C) 20 year maximum otherwise subjected to Frazee) was error that was plain. Especially, when Frazee contested said quantities at sentencing, and the sentencing court used the wrong standard as found under Apprendi and Alleyne supra, when determining its findings under a preponderance of the evidence. Because such findings seriously affects the fairness, integrity or public reputation of the judicial proceedings.

Based on the foregoing facts and law, Frazee has affirmatively pleaded "prejudice" in his case within the meaning of Strickland v. Washington, 466 US 668 (1984) and United States v. Glover, 531 US 198 (2001).

This is because Frazee has pleaded and provided competent evidence that, absent counsel's unprofessional acts and/or omissions, there is a reasonable probability the outcome of the sentencing process would have been different, a probability sufficient to "undermine confidence" in the outcome.

Based on all the foregoing, Frazee respectfully asks this Honorable Court to **ORDER** an evidentiary hearing in which he can be allowed to prove his case.

**1B2.) Frazee was Prejudiced by the Cumulative Impact of Multiple Deficiencies or Errors by Counsel During the Pretrial, Plea, Sentencing and Direct Appeal Process.**

Even where no **single** error by counsel is sufficient to vacate the conviction and/or sentence of the defendant, prejudice may result from the cumulative impact of multiple deficiencies or errors by counsel during the trial process. Mathews v. Abramajtys, 2003 US App. Lexis 2187 (6th Cir.) (affirming in part Mathews v. Abramajtys, 2000 US Dist. Lexis 4635 (E.D. Mich. 4-11-00)).

In Frazee's case, as set forth in the foregoing arguments and in the Statement of Claim of his Section 2255 motion, counsel's performance was below the objective standard required by the Constitution in multiple areas. While Frazee respectfully submits that each of the multiple professionally unreasonable acts and omissions of counsel prejudiced him within the meaning of Strickland, he was **clearly** prejudiced by the **cumulative** impact of the multiple deficiencies and errors.

Based on the foregoing facts and law, Frazee has affirmatively pleaded "prejudice" in his case within the meaning of Strickland v. Washington, 466 US 668 91984) and United States v. Glover, 531 US 198 (2001), due to the "multiplicity of errors" which denied Frazee his Sixth Amendment constitutional right to effective assistance of counsel during the pretrial, plea, sentencing and direct appeal process. Id.

Based on all of the foregoing, Frazee respectfully asks this Honorable Court to **ORDER** an evidentiary hearing in which he can be allowed to prove his case.

**2.) Frazee's Sentence was Unlawfully Computed When Drug Determinations Were Made From an Indictment That did not Specify Drug Amounts That Exceeded 500 Grams of Methamphetamine.**

As set forth above, in Alleyne v. United States, 113 S.Ct. 2151 (2013)

and Apprendi v. New Jersey, 530 US 466 (2000) where the Supreme Court held, that Due Process, required that any fact that increased penalty prescribed by Statutory Minimum/Maximum - other than fact of prior conviction - had to be submitted to the jury and proven beyond a reasonable doubt, it follows that a district court's discretion to sentence (under a perponderance) a defendant for violating 21 USC § 841 federal drug laws, must be between (minimum/maximum) statutory facts (i.e., drug penalty quantities 21 USC § 841(b)(1)(A),(B),(C)'s) found by the jury as indicted.

Congress historically permitted district courts "wide discretion to decide whether the offender should be incarcerated and for how long." Mistretta v. United States, 488 US 361 (1989). For most crimes, Congress set forth a range of sentences, and sentencing courts had "almost unfettered discretion" to select the actual length of a defendant's sentence "within the customarily wide range" Congress had enacted. Id at 364; see also, Apprendi v. New Jersey, 530 US 466, 481-82 (2000). That discretion allowed district courts to craft individual sentences, taking into account the facts of the crime and the history of the defendant. As a result "[s]erious disparities in sentences... were common." Mistretta, supra, at 365.

Yet in the long history of discretionary sentencing, the Supreme Court has "never doubted the authority of a judge to exercise board discretion in imposing a sentence **within a statutory range.**" United States v. Booker, 543 US 220, 223 (2005); see also, e.g., Apprendi, supra, at 481 ("[N]othing in this history suggest a judgment with the range prescribed by statute."); Giaccio v. Pennsylvania, 382 US 399, 409 (1966)("[w]e intended to cast no doubt whatever on the constitutionality of the settled practice of many states to leave to the juries findings defendants guilty of a crime the power to fix punishment within legally prescribed punishment."

As set forth above, when the Presentence Report was prepared, the Probation Officer calculated the "Base Offense Level" under the Guidelines by utilizing the quantity of methamphetamine from the initital drafted plea agreement; 14.06 Kilograms. This resulted in a USSG BOL of 34 with a sentencing range of 212-327 months under the USSG " 2D1.1(c). The Probation Officer then determined that Frazee was an organizer, leader, manager, or supervisor under USSG § 3B1.1(a) and enhanced Frazee's BOL an additional 4 levels. That resulted in an adjusted offense level of 38, with a sentencing range of 360 months to life. Finally, the Probation Officer reduced Frazee's adjusted offense level by 3 BOL's under USSG § 3E1.1 for "acceptance of responsibility." This resulted in a Total Offense Level of 35. With a Total Offense Level of 35 and a Criminal History of VI (Movant scored 17 CHC points under USSG § 4A1.1), the Probation Officer recommended a guideline sentencing range of 292-365 months of incarceration.

On December 6, 2017 Frazee appeared for sentencing. At sentencing, the District Court adopted the Guideline calculations of the Probation Officer. [Doc. 244] Sentencing Trans., p. 23, Ln. 14-24.

Under Alleyne v. United States, 113 S.Ct. 2151 (2013) and Apprendi v. New Jersey, 530 US 466 (2000), the District Court erred.

The Court should **not** have initially calculated Frazee's drug liabilities under USSG § 2D1.1(c) BOL 34 for 14.06 Kilograms, when the indictment had only alleged 50 to 500 grams of methamphetamine. The Court should instead have calculated the "otherwise applicable" Base Offense Level of 30, being that Frazee's drug liabilities according to the indictment fell between Sections 841(b)(1)(C) and 841(b)(1)(B) according to context alleged in the indictment. It then should have adjusted Frazee's USSG BOL to 27 having found petitioner had accepted responsibility under USSG § 3E1.1, moreover

because there was no sworn factual basis in the PSR or on the record, that he was a leader/organizer as required for the enhancement under USSG § 3B1.1(a). This sequence of sentencing would have resulted in a reduction of Frazee's Total Offense Level from 35 to 27 and a reduction in his guideline from 292-365 months to 130-162 months.

As set forth in ¶ 34, supra, this Court has jurisdiction to entertain, rule on the merits, and grant relief in Claim Number Three under 28 USC § 2255 and the principles of Davis v. United States, 417 US 333 (1974)(Statutory claim can be raised in motion pursuant to 28 USC § 2255).

As set forth above, this court should review Claim Three for "clear error" instead of "cause and prejudice."

Base on the foregoing facts and law, this Court should **ORDER** an evidentiary hearing to allow Frazee to prove his case.

**3.) An Evidentiary Hearing is Necessary and Would be Useful to the Court.**

Title 28, United States Code, Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the sentence to vacate, set aside or correct the sentence. This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to not relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

28 USC § 2255; Guy v. Gockrell, 343 F.3d 348 (5th Cir. 2003)(disputed issues of material fact require evidentiary hearing).

In the instant case as set forth in the Statement of Claim of the § 2255 motion, and the foregoing arguments, Frazee has pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and/or sentence

is volative of his Sixth Amendment right to effective assistance of counsel in the pretrial, plea, sentencing and direct appeal process. Id.

Frazee has also pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and/or sentence was and is violative of USSG § 3B1.1 and USSG 2D1.1(c), and that Count 1 failed to state drug quantities under 50 and over 500 grams of methamphetamine for that the court could find petitioner liable thereof according to federal law 21 USC § 841(b)(1)(A), and should consequently be reviewed under "clear error" by this Court under Fed.R.Crim.P. Rule 52(b).

While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records." See Statement of the Claim ¶¶ 17-23. These allegations require an evidentiary hearing under well settled law. Guy v. Cockrell, 343 F.3d 348 (5th Cir. 2003)(disputed issues of material fact require evidentiary hearing).

Based on all the foregoing, Frazee respectfully request this Honorable Court to ORDER an evidentiary hearing where he can prove his case.

### Conclusion

Frazee has demonstrated by the foregoing argument, the factual allegations of his motion, and the attached veried exhibits, that his conviction and/or sentence is violative of his Sixth Amendment right to effective assistance of counsel in the pretrial, plea, sentencing and direct appeal process in his case.

Frazee has also pleaded, presented evidence, and argued applicable law to demonstrate that his sentence was and is volative of USSG § 3B1.1 and USSG § 2D1.2 and law governing federal drug statute 21 USC § 841 and which

22.

should consequently be reviewed under "clear error" by this Court.

While many of the allegations are already supported by the record, some need to be developed at an evidentiary hearing.

**Wherefore, Movant** Casy Frazee respectfully asks this **HONORABLE COURT** to:

**ORDER** an evidentiary hearing as set forth in his § 2255 motion; and upon proof of his allegations herein,

**ORDER** that Frazee's sentence be **VACATED** and that he be **RESENTENCED** to 130 **MONTHS.**

**ORDER** that Frazee's sentence be **VACATED** and that he be **ALLOWED TO PURSUE TRIAL.**

Dated:

s/ *Casy Frazee*
Casy Frazee (Pro se)
Reg. No. 79199-180
F.C.I. Florence
P.O. Box 6000
Florence, CO 81226-6000

## UNSWORN DECLARATION PURSUANT TO 28 U.S.C. § 1746

I Casy Frazee, hereby declare under 28 USC § 1746 that the instant unsworn declaration is true and correct and may serve as my statement of testimony on Habeas Corpus Motion to Vacate 28 USC § 2255 proceedings. that stems from the US District Court Criminal Case No. 7:17-CR-153-1 out of the Western District of Texas, Midland-Odessa Division. I specifically depose the following, voluntarily, without threat and/or coercion by anyone:

1. My name is Casy Frazee, my Federal Reg. No. is 79199-180. I currently reside at the Federal Correctional Institution located in Florence Colorado. I am over 18 years of age and of sound mind. I have personal knowledge of the facts stated in this declaration, being that it is in regard to my attorney/client conversations I had with my Counsel Josh Stephens during the course of all proceedings related to the above criminal cause/action.

2. I am a defendant in Case No. 7:17-CR-153-1. I am currently serving a 292 month sentence as a result of plea in the criminal action. I was alleged to have conspired with my co-defendants 50 grams or more of actual meth- amphetamine in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(A) and 846

3. I had personally been found by the sentencing judge in Case No. 7:17-Cr-153-1 liable for 14.06 Kilograms of Methamphetamine, and as the leader/organizer of my codefendants.

4. I was appointed Counsel Josh Stephens at the initial stage of my court proceedings in the above cause action. Josh Stephens law office is located at 307 N. Grant Ave., Suite 400 in Odessa, Texas 79761.

5. My first initial attorney/client conference with Mr. Stephens had taken place at the US District Courthouse located in Midland Texas on or about June of 2017. At that meeting Counsel introduced himself to me, and informed me as to the allegations contended in the indictment by the government on Count 1. Counsel said, in no uncertain terms that he would investigate the allegations and the relevant law and get back with me with his analysis as soon as possible. Before counsel had left, I had brought to his attention that he might look at the government's allegation against me on Count 1, in the perspective that my only crime if any, according to the indictment's content is that I had only introduced Jaymi Rice to Billy Highfill. And that I never had agreed to distribute any narcotics with any of the co- defendants I had been indicted with. Matter of fact, I also told counsel that I neither received any compensation for any of the drug transactions my co-defendants were alleged to have committed. Moreover, I had told counsel that even if I had known that my co-defendants dealt drugs it is not proof of my having conspired with them, just because of what I knew. I should be only accountable for what I had agreed to distribute with my co-defendants and that is nothing. Counsel's response to me, was that my points would be taken in on his investigation, and he would get back with me.

6. My second attorney/client conference with Mr. Stephens had taken place at Ector County Correctional Center (ECCC) on or about early August of 2017. Counsel had informed me that he had investigated the relevant

facts and law in the case at hand. Counsel had informed me based solely on the recorded conversations in Ector County Correctional Center that there was nothing he could do, expect plea me out. Matter of fact, he had told me that the government would be drafting a plea proposal soon to negotiate a plea, and that I should consider such. More specifically, he told me there was a change that the government may file a 21 USC § 851 enhancement against me, based on my having prior drug convictions.

At this meeting, I had told my counsel that I was not opposed to pleaing, however, I could not see how he could say I did not have any legal position against the allegations in the indictment. I reiterated my points I had told counsel at our initial conference: 1. my only crime was my introducing Jamyi Rice to Billy Highfill (in regard to the phone calls); 2. that, I had not agreed to distribute narcotics with anyone on the indictment. Moreover I told counsel, even if I had knowledge of my co-defendant's drug dealing via the phone conversations being used against by the government, it did not prove I had agreed with any of them to distribute narcotics. I asked him to consider for argument sake, that I hadn't received anything of value i.e., compensation from anyone I allegedly conspired with. So, if he truely believed he could not fight my case, that he should consider at the very least my points on plea matters.

Counsel told me the points I was raising to him were sentencing matters, but that they may have merit on negotiations and would utilize them accordingly.

7. My third attorney/client conference with Mr. Stephen had taken place at the United State Courthouse located in Midland Texas, on or about August 17th, 2017. At that conference, counsel provided me with the government's initial draft on plea negotiations. Counsel had told me before I read the plea, that if I were to agree to an expedited plea the very same day, I could get the benefit of getting a sentenced between 120-140 months. After having read the initial draft, I pointed out to counsel: 1. that the factual basis was incorrect being that I had not transported with Melanie Ivy during a trip from El Paso Texas to Odessa Texas 40 pounds and/or ounces as alleged by the government. I told, counsel that discussion over the phone with Ivy was pertaining to confronting her prior to our approaching a check point leaving El Paso was about her telling me she was holding a syringe of methamphetmine containing 40cc's. I told him that needs to be corrected; 2. I also, told counsel that the governments allegations that I am a leader/organizer was also not so. I specifically, told counsel that the government's allegation I was directing Jaymi Rice during the conspiracy when, I suggested to Rice she cut off Andrew Settles - after she had complained to me about Zoey -- and his girlfriend Zoey Tolbert was factual conjecture, and simply wrong. Because if counsel looked to the facts, it would show that my suggestion to Rice fell on deaf ears, based on Rice having continued her relations with Settles according to the plea draft factual bases the government sought me to agree with. Simply, The recorded phone calls in evidence proves a continuous relationship between Rice and Settles. Further Byer's was arrested after leaving Rice's residence on 4-13-2017 which can also be verified by police records. Which clearly shows Rice, wasn't being lead by me, otherwise that would have never happened. I told counsel, that if he looked at the plea deal the government was offering, it placed me in the conspiracy by the factual conjecture with Rice, and the 40 cc's with Melanie, but neither proved my conspiring with my co-defendant's because I had **NOT** agreed to any drug dealing with them. And again, my only crime was my introducing Rice to Highfill. At worst and if that's even a crime ? I told counsel my part of any conspiracy was the 40 cc's with Ivy at the check point. As such, I should only be liable for cospiring between 0-50 grams at the most.

Counsel reponded, by saying that he would renegotiate the plea issues and get back with me. When Counsel returned shortly thereafter, he told me the government had agreed: that I would receive no more than 120-140 months, that I would not receive an enhancement as a leader/organizer and that, I would not be liable to more than 50 grams of mehtamphetamine. However, he emphasized that in order for me to get the deal, I would have to sign the plea's factual basis today and plead before the magistrate. I asked counsel, whether these points would be discussed with the magistrate at court today if I signed. Counsel said, no, that we were to just accept the plea as is for now, and that the particular wording stipulated by the government would be hammered out prior to sentencing in the district court, where I would sign a fresh factual basis. I asked him what assurances do I have if the government reneges on its promises. Counsel said, I could pull my plea. I told him if he believes that's best he can do under my situation I would agree to sign the plea. At the rearraignment/plea I sought to discuss what my counsel told me in conference, but counsel cut me off, and advised me not to speak about the specifics until we are in front of the District Court Judge.

8. Before sentencing, I had received a letter from co-defendant Melanie Ivy. Ivy had conveyed her concerns as to how the government had been pursuing me. She had told me what she had told authorities about our relations were being exaggerated. And suggested I let my counsel know, she would help me if need be as the true facts on out travels and the allegations of the government saying I was leading her and my co-defendants. I gave a copy of the letter to my counsel and asked him to obtain an affidavit from her. I told him it might be useful at sentencing in case something went awry. Counsel said, he would check it out.

9. At the day of sentencing on December 6, 2017 I met with counsel. Counsel had shown me my Presentencing Report. I made various objections to the report. I told him the report contradicts everything he had told me as to our plea agreement with the government. Counsel said, he will make objections to the report, and if the judge overrules his objections he would appeal them. I asked him how would he do that when the plea requires my waiver of appeal? Counsel said, that if the judge errors during sentencing I can appeal. I told, him I didn't believe that and that I was thinking about pulling my plea if the judge won't accept the conditions he had told me the government had agreed to. Counsel said, fine, but let him do the talking. I said, well I'm going to be asked if I have anything to say aren't I? Counsel said, of course. I told him well, depending on what you say and what he does, I still want to let him know on the record what I had agreed to. Because the Presentencing Report wants the court to sentence me to over twenty years. That's not what you told me I would receive. Moreover, all the points you said the government had to agreed to the Presentencing Report seems to reflect that isn't so. I also, asked counsel had he looked into co-defendant Ivy. Counsel said it wasn't necessary under our plea. I told him, if he was serious? Because as far as I was concerned we don't have a plea. Counsel told me not to worry, and that I should have faith in him.

10. At sentencing I tried to let the judge know the about the above attorney client conferences and the promises made by counsel so that I would plea. The court said in no uncertain terms, that the only thing that matter to it was that I signed the plea's factual basis. And based on that alone

I was subjected to the stipulated conditions within that document. The Court sentence me thereof to 292 months. [Doc. 244] Sentencing Trans., p. 16, ¶¶ 12-18.

Signed under penalty of perjury under 28 USC § 1746, on this ___19___ day, in the Month of _January_ 2019.

s/ _Casy Frazee_

Casy Frazee (Pro se)
Reg. No. 79199-180
F.C.I. Florence
P.O. Box 6000
Florence, CO 81226-6000

UNSWORN DECLARATION PURSUANT TO 28 U.S.C. § 1746
By, Melanie Ivy regarding Casy Frazee

I Melanie Ivy, hereby declare under the penalty of perjury, that the instant Unsworn Declaration is true and correct, and may serve as my statement of testimony in Case No. 7:17-CR-153-1, stemming out of the Western District of Texas, Midland-Odessa Division. I specifically depose to the following, under my own volition without threat and/or coercion by anyone in regard to my relations with Casy Frazee during the alleged conspiracy charged int the above cause action during the years of 2016-2017.

1. My Name is Melanie Ivy my Reg. No. 02185770. I am over 18 years of age and of sound mind. I currently reside at: 1916 N. Hwy 36 By Pass Gatesville, Tx 76596. I also have personal knowledge of the facts stated in this declaration, since they are in regard to myself and Casy Frazee.

2. I am a defendant in the above cause action. I am serving a 4 yr. ~~month~~ prison sentence.

3. I and my co-defendants are alleged to have conspired to possess with intent to distribute more than fifty grams of actual methamphetamine in violation of 21 USC §§ 841(a)(1), 841(b)(1)(A) and 846 on a one count indictment.

4. I personally have been found liable for 10.888 Kilos ~~pounds~~ of methamphetamine by the district court in this case.

5. I also am currently litigating my case on several issues.

6. It was alleged by the government in this case, that Frazee and I possessed 40 ounces of methamphetamine as part of the conspiracy (i.e., transporting of methamphetamine) brought from El Paso to Odessa Texas to distribute in the month of January 2017.

7. The allegation as stated in ¶ 6 is false, while it is true that Frazee and I made a trips to El Paso, the trips were not to make a connection or to buy methamphetamine to take back to Odessa, but were to visit my family. Frazee offered me transportation, due to me not having a vehicle. The methamphetamine alleged between us on one of the trips we had was for personal use. Hence the 40 ounces alleged was in reality 40cc's of methamphetamine in a syringe for personal use. The government's claim that in an interview I stated that, that we never had 40 ounces, that it was "considerably less, more like a pound," is not true. Frazee and I never transported methamphetamine back to Odessa from El Paso for distribution.

8. The government also alleged that Frazee is responsible for the methamphetamine associated with me, to wit 24 pounds, that the government claims I told an agent in Arizona, that I took trips once a week for two months to purchase 3 pounds per trip.... I never had taken those trips, never said that I had and never stated Frazee had anything to do with said trips... Simply, we were friends prior to the alleged conspiracy between us. And it is to the best of knowledge that Frazee had not led or had any authority over me or anyone in the conspiracy, co-defendant Rice and my relationship had nothing to do with Frazee. Additionally, Frazee did not know about any specific amounts or details or dealings between myself and/or other co-defendants, nor did he have any say as to their initiations and/or methods.

9. I had sent Frazee several letters while being detained at the Ector County Correctional Center in Odessa, Texas as to ¶¶ 7-8, and told him I would testify to the facts in court and/or make an affidavit to such. I let him know he could send his attorney and/or investigator from his attorney's office to me, in order to retrieve an affidavit from me or to sign a document that I would testify on his behalf. However, his attorney had never approached me (Frazee told me he would) after Frazee had informed me that he gave my letters to his attorney in order to make that happen. As such, I provide this affidavit to support the incorrect *allegations against Frazee that I have personal knowledge of.*

Signed under penalty of perjury under 28 USC § 1746, on this 5 day, in the Month of Sept, 2018.

s/ Melanie Ivy #02185770
Melanie Ivy
Reg. No.

FILED

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND-ODESSA DIVISION

JUN 21 2017

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

MO 17CR · 153

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                    Plaintiff, | CRIMINAL NO.<br>**INDICTMENT** |
| V. | [Vio: 21 U.S.C. § 846 -<br>Conspiracy; |
| CASY FRAZEE ,<br>DANIEL FRANCO,<br>ANDREW SETTLES,<br>BILLY HIGHFILL,<br>MELANIE IVY,<br>JAYMI RICE,<br>LYNETTA BYERS, | 21 U.S.C. § 841(a)(1)-<br>Possession With Intent to<br>Distribute a Controlled<br>Substance] |
|                    Defendants. | |

### THE GRAND JURY CHARGES:

### COUNT ONE
### [21 U.S.C. § 846]

Beginning on or about January 1, 2017 and continuing until on or about June 1, 2017, in the Western District of Texas and elsewhere, the Defendants,

### CASY FRAZEE;
### DANIEL FRANCO;
### ANDREW SETTLES;
### BILLY HIGHFILL;
### MELANIE IVY;
### JAYMI RICE; and
### LYNETTA BYERS,

did combine, conspire, confederate and agree together and with each other to possess with intent to distribute a controlled substance, which offense involved more than 50 grams of actual methamphetamine, contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

### QUANTITY OF CONTROLLED
### SUBSTANCES INVOLVED IN THE CONSPIRACY

The quantity of actual methamphetamine involved in the conspiracy and attributable to each Defendant as a result of each Defendant's own conduct and as a result of the conduct of other conspirators reasonably foreseeable to each Defendant is as follows:

| DEFENDANT | QUANTITY | STATUTE |
|---|---|---|
| FRAZEE | 50 grams or more of actual methamphetamine | 21 U.S.C. § 841(b)(1)(A) |
| FRANCO | 50 grams or more of actual methamphetamine | 21 U.S.C. § 841(b)(1)(A) |
| SETTLES | 50 grams or more of actual methamphetamine | 21 U.S.C. § 841(b)(1)(A) |
| HIGHFILL | 50 grams or more of actual methamphetamine | 21 U.S.C. § 841(b)(1)(A) |
| IVY | 50 grams or more of actual methamphetamine | 21 U.S.C. § 841(b)(1)(A) |
| RICE | 50 grams or more of actual methamphetamine | 21 U.S.C. § 841(b)(1)(A) |
| BYERS | 50 grams or more of actual methamphetamine | 21 U.S.C. § 841(b)(1)(A) |

All contrary to Title 21, United States Code, Section 846.

A TRUE BILL.

Original signed by the
foreperson of the Grand Jury

RICHARD L. DURBIN, JR.
UNITED STATES ATTORNEY

GLENN HARWOOD
Assistant United States Attorney

Casy Frazee 79199-180
Federal Corrections Institution
PO BOX 6000
Florence, Co. 81226



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
CERTIFIED MAIL

7018 0360 0002 2080 1781

United States Federal Courthouse
100 E. Well Street
Midland, Texas 79701

